[998 NYS2d 120]

# In the Matter of Luis C., Appellant.

Second Department, December 3, 2014

### APPEARANCES OF COUNSEL

*Seymour W. James, Jr.*, New York City (*Tamara A. Steckler* and *Mark Dellaquila* of counsel), for appellant.

*Zachary W. Carter, Corporation Counsel*, New York City (*Kristin M. Helmers* and *Deborah A. Brenner* of counsel; *Rebecca Hausner* on the brief), for respondent.

### OPINION OF THE COURT

BALKIN, J.

The facts in this juvenile delinquency proceeding are undisputed. The appellant, Luis C., used his grandfather's debit card number, without permission, to buy sneakers on the Internet. There is no evidence that Luis ever took or possessed the card itself. After a fact-finding hearing, the Family Court found that Luis had committed acts which, if committed by an adult, would have constituted the crimes of grand larceny in the fourth degree under Penal Law § 155.30 (4) and criminal possession of stolen property in the fourth degree under Penal Law § 165.45 (2). Those sections, as relevant here, relate to the theft or possession of property that "consists of a . . . debit card" (Penal Law § 155.30 [4]; *see* Penal Law § 165.45 [2]). Luis contends that he could not be found to have violated those particular statutory provisions with respect to his grandfather's debit card in the absence of any evidence that he took or possessed the card itself.

The presentment agency now agrees with Luis that the petition should be dismissed. While contending that the evidence of Luis's larcenous intent is "compelling," the presentment agency concedes that without evidence that Luis took or possessed the card itself, the fact-finding rests on legally insufficient evidence. This issue, however, is one of first impression in this Depart-

ment. Moreover, in a decision issued after the briefs were filed in this case, the Appellate Division, First Department, upheld a conviction for criminal possession of stolen property in the fourth degree under facts that are analogous to the undisputed facts here. In *People v Barden* (117 AD3d 216 [2014], *lv granted* 24 NY3d 959 [2014]), the defendant's conviction was based on his use of a credit card number, despite undisputed evidence that he never possessed the card itself. Thus, even given the presentment agency's concession in the appeal before us, the law is unsettled.

For the reasons explained below, we conclude that the two Penal Law provisions referenced in this petition—Penal Law §§ 155.30 (4) (grand larceny in the fourth degree) and 165.45 (2) (criminal possession of stolen property in the fourth degree)—proscribe the theft and possession, respectively, of the physical card, not merely the numbers assigned to it. In other words, Luis did not steal or possess a "debit card" merely by using the card numbers to buy the sneakers. Luis's acts certainly violated provisions of the Penal Law, just not the ones charged in the petition. And, to the extent that *Barden* is inconsistent with our conclusion, we decline to follow it, for reasons we will explain in detail.

At the fact-finding hearing, Luis's grandfather testified that when he tried to use his debit card on March 19, 2013, he found that the balance was insufficient to make his purchase. He called the card issuer and learned that a $120 purchase had been made on the card. When he returned home, he found a package addressed to Luis, who was staying with him. The package contained a pair of sneakers and a receipt. The receipt indicated that the complainant's debit card had been charged for the purchase.

Luis admitted that he had ordered the sneakers and had used his grandfather's debit card number to pay for them. There was, however, no evidence that Luis ever possessed the debit card itself. Indeed, when asked at the fact-finding hearing whether Luis ever possessed the debit card itself, the complainant answered: "I never said he had the card in his hand."

After the fact-finding hearing, the Family Court sustained both counts of the petition. In its order of disposition, the court adjudicated Luis a juvenile delinquent and placed him on probation for a period of 12 months.

Before we address the substantive issue on this appeal, we note that the period of probation has expired. Thus, the appeal

from so much of the order of disposition as placed Luis on probation is academic and must be dismissed (*see Matter of Christian E.*, 68 AD3d 1109 [2009]). Nonetheless, we must address the remainder of the appeal from the order of disposition, which brings up for review the fact-finding order.

Statutory interpretation is an inquiry into legislative intent (*see Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 19 NY3d 106, 120 [2012]; *Matter of New York County Lawyers' Assn. v Bloomberg*, 19 NY3d 712, 721 [2012]; *People v Ryan*, 274 NY 149, 152 [1937]). The clearest evidence of that intent is in the statutory text (*see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]; *Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]). Context, however, is also important: "inquiry must be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history" (*Matter of Sutka v Conners*, 73 NY2d 395, 403 [1989]; *see Riley v County of Broome*, 95 NY2d 455, 463-464 [2000]; *cf. Bond v United States*, 572 US —, 134 S Ct 2077, 2090 [2014]). Courts must also respect the principle that a statute is to be construed as a whole (*see Matter of New York County Lawyers' Assn. v Bloomberg*, 19 NY3d at 721). Accordingly, "its various sections must be considered together and with reference to each other" (*People v Mobil Oil Corp.*, 48 NY2d 192, 199 [1979]).

The relevant statutory provisions are as follows:

Penal Law § 155.30

"Grand Larceny in the fourth degree

"A person is guilty of grand larceny in the fourth degree when he steals property and when . . .

"4. The property consists of a credit card or debit card" (Penal Law § 155.30 [4]).

Penal Law § 165.45

"Criminal possession of stolen property in the fourth degree

"A person is guilty of criminal possession of stolen property in the fourth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or

to impede the recovery by an owner thereof, and when: . . .

"2. The property consists of a credit card, debit card or public benefit card" (Penal Law § 165.45 [2]).

Penal Law § 155.00

"Larceny; definitions of terms

"The following definitions are applicable to this title:* . . .

"7. 'Credit card' means any instrument or article defined as a credit card in section five hundred eleven of the general business law.

"7-a. 'Debit card' means any instrument or article defined as a debit card in section five hundred eleven of the general business law" (Penal Law § 155.00 [7], [7-a]).

General Business Law § 511

"Definitions

"In this article, unless the context or subject matter otherwise requires:

"1. 'Credit card' means and includes any credit card, credit plate, charge plate, courtesy card, or other identification card or device issued by a person to another person which may be used to obtain a cash advance or a loan or credit or to purchase or lease property or services on the credit of the issuer or of the holder; . . .

"9. 'Debit card' means a card, plate or other similar device issued by a person to another person which may be used, without a personal identification number, code or similar identification number, code or similar identification, to purchase or lease property or services. The term does not include a credit card or a check, draft or similar instrument" (General Business Law § 511 [1], [9]).

---

* "[T]his title" is title J of the Penal Law, which is entitled "Offenses Involving Theft." Title J includes, as relevant in this appeal, article 155 (Larceny) and article 165 (Other Offenses Relating to Theft)."

The texts of the statutes speak only in terms of physical items; intangibles such as accounts or account numbers are not included. Even the catch-all phrases—"other identification card or device" and "other similar device"—refer to physical items (General Business Law § 511 [1], [9]). Thus, a purely textual reading of the statutes that Luis was alleged to have violated supports the conclusion of Luis and the presentment agency that "debit card" means the physical card or device itself.

This conclusion is reinforced when the provisions are viewed in context. The common structure of article 155 (Larceny) and article 165 (Other Offenses Relating to Theft) evinces the legislature's careful consideration of how various thefts and possessions of stolen property should be classified. For the most part, the article 155 and article 165 crimes are classified by the value of the property taken or possessed (*see* Penal Law §§ 155.25, 155.30 [1]; 155.35 [1]; 155.40 [1]; 155.42, 165.40, 165.45 [1]; 165.50, 165.52, 165.54).

Some classifications, however, depend not on the value of the property, but on the *kind* of property. Most of these provisions elevate, to felony classification, thefts or possessions that would have been misdemeanors had they been measured based solely on the value of the property. These provisions relate to public records, writings, or instruments (Penal Law § 155.30 [2]); secret scientific material (Penal Law § 155.30 [3]); firearms, rifles, or shotguns (Penal Law §§ 155.30 [7]; 165.45 [4]); access devices that the person intends to use unlawfully to obtain telephone service (Penal Law § 155.30 [10]); and certain substances that may be used to manufacture methamphetamine (Penal Law §§ 155.30 [11]; 165.45 [7]). They also include the enhancement at issue in this case, debit cards, as well as credit cards (Penal Law §§ 155.30 [4]; 165.45 [2]).

One important reason for the automatic enhancement in classification of certain larceny and possession crimes is a difficulty in establishing a value for some types of property. Even though the larceny or possession of the property is regarded as inherently serious, a solely value-based classification would often result in misdemeanor classification. Thus, as one commentator noted with respect to grand larceny in the fourth degree, "[i]t is for these reasons that the section at hand arbitrarily classifies any such theft as grand larceny and felonious" (Arnold D. Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 155.30 at 156 [1975 ed]).

It was precisely this valuation problem that prompted the legislature to enact the first versions of what are now Penal

Law §§ 155.30 (4) and 165.45 (2). A credit card—the card itself—was seen as having only negligible value, so the theft of a credit card could not be punished as a felony based on valuation. In approving chapter 115 of the Laws of 1969, Governor Nelson A. Rockefeller explained that credit cards had become a major factor in the consumer economy only over the past decade, but the laws had not kept pace with this change. Organized crime had taken advantage of loopholes. The Governor said that chapter 115 was intended to close those loopholes:

"Specifically the bill would:

"—make the theft of a credit card grand larceny in the third degree. (*Under existing law, when applying the larceny statutes, the value of a credit card is deemed to be no more than the value of the plastic or paper on which it is printed*, resulting in a minimal penalty for conviction when compared to the gravity of the subsequent crimes its theft facilitates)" (Governor's Mem approving L 1969, ch 115, 1969 McKinney's Session Laws of NY at 2541 [emphasis added]).

Thus, in accord with the legislative intent, the theft of a credit card has been, since 1969, a completed felony upon the taking of the card. There is no need for the People to prove that the thief actually used the card, nor any need for the People to prove the "value" of the card. Since 1988, the same has been true with respect to debit cards (*see* L 1987, ch 556). The purpose of the addition of debit cards was to give holders of debit cards the same protection that holders of credit cards already enjoyed (*see* Letter from L. Paul Kehoe, July 2, 1987, Bill Jacket, L 1987, ch 556 at 5 [urging Governor's approval of A3279]).

In summary, given the text of the provisions at issue, the context of the law and its development over the years, we agree with Luis and the presentment agency that "debit card" as used in Penal Law §§ 155.30 (4) and 165.45 (2) means the physical card, not the intangible account information associated with it. We also agree that, at bottom, this case involves errors made when the petition was drafted. Luis's acts undoubtedly violated provisions of the Penal Law, but not the provisions charged in the petition.

A person who appropriates account information is not immune from punishment. The legislature has enacted laws to

protect account information, in addition to the laws relating to the cards themselves. Specifically, in chapter 619 of the Laws of 2002, the legislature amended or added sections to various statutes in order to address the problem of people who engage in identity theft or use other people's personal information without authorization. That legislation added the crimes of identity theft in the third, second, and first degrees (Penal Law §§ 190.78, 190.79, 190.80), as well as unlawful possession of personal identification information in the third, second, and first degrees (Penal Law §§ 190.81, 190.82, 190.83). Later, the legislature added "aggravated identity theft" (Penal Law § 190.80-a; *see* L 2008, ch 226, § 2). These provisions, similar to the provisions at issue in this case, make the criminal possession of account information a completed crime; no proof is required that the information was actually used.

One of the crimes added in 2002, unlawful possession of personal identification information in the third degree (Penal Law § 190.81), directly proscribes what Luis did in this case when he used his grandfather's debit card number, without permission, to buy sneakers:

> "*A person is guilty of unlawful possession of personal identification information in the third degree when he or she knowingly possesses a person's* financial services account number or code, savings account number or code, checking account number or code, brokerage account number or code, credit card account number or code, *debit card number* or code, automated teller machine number or code, personal identification number, mother's maiden name, computer system password, electronic signature or unique biometric data that is a fingerprint, voice print, retinal image or iris image of another person *knowing such information is intended to be used in furtherance of the commission of a crime defined in this chapter*" (emphasis added).

Thus, just as the legislature added credit cards to the penal provisions of the law when the use of credit cards became widespread, and added debit cards when the use of debit cards became widespread, it also added provisions related to the unauthorized possession of the intangible account information when technology demanded.

We also note that crimes relating to the theft or possession of cards or account information are distinct from the crimes com-

mitted when the cards or account information are subsequently misused; the subsequent misuse is an additional crime, distinct from the taking of the card or the obtaining of the numbers (*see People v Farnsworth*, 103 AD3d 982, 982-983 [2013]; *People v Carandang*, 92 AD3d 432, 433 [2012]; *People v Quaresimo*, 286 AD2d 876, 876 [2001]; *People v Freeman*, 99 AD2d 648, 648 [1984]).

To the extent that the First Department's decision in *People v Barden* (117 AD3d 216 [2014], *lv granted* 24 NY3d 959 [2014]) is inconsistent with our conclusion, we decline to follow it. There, the defendant used credit card information on file with a hotel to obtain lodging. The credit card account belonged to the defendant's business associate, but the defendant's use of the information went well beyond what the account owner had authorized. It was undisputed that the defendant had never actually possessed the card itself. Nevertheless, the First Department upheld a conviction for criminal possession of stolen property in the fourth degree under Penal Law § 165.45 (2), concluding that the defendant's constructive possession of the credit card number amounted to possession of the credit card within the meaning of Penal Law § 165.45 (2).

The *Barden* Court pointed out that the Penal Law's definition of "credit card" (Penal Law § 155.00) incorporates by reference the definition of "credit card" in General Business Law § 511 (1). As we have noted, this definition speaks in terms of a tangible physical item—the card itself. Although the *Barden* Court acknowledged that the section 511 (1) definition "appears to exclude credit card numbers" (117 AD3d at 234), the Court further looked to General Business Law § 511-a (entitled "Additional definition"). That section contains an expanded definition of "credit card": "*[f]or purposes of this article* 'credit card' shall also mean any number assigned to a credit card" [emphasis added]). The *Barden* Court found that this additional definition clarified General Business Law § 511. The Court then concluded:

> "because § 511-a purports to modify the definition of 'credit card' for the purposes of the same article of the General Business Law in which section 511 appears, it follows that General Business Law § 511-a modifies section 511. As a result, the Penal Law's reference to General Business Law § 511 also incorporates the expanded definition found in section 511-a" (117 AD3d at 234).

We disagree. The Penal Law definition of "credit card" refers only to General Business Law § 511; it does not refer to General Business Law § 511-a, which is an entirely separate section. Had the legislature intended to incorporate General Business Law § 511-a into the Penal Law definition of "credit card," it easily could have done so. Indeed, as the *Barden* Court recognized, the legislative history of General Business Law § 511-a suggests that the legislature intended it to apply only to the General Business Law (117 AD3d at 234, citing Sponsor's Mem, L 2002, ch 619, McKinney's Session Laws of NY at 2093). The purpose of article 29-A of the General Business Law (General Business Law §§ 511-520-D)—to protect consumers from credit card companies—is entirely different from the credit card provisions in the theft and criminal possession articles of the Penal Law. Moreover, by adopting an expanded definition only of the term "credit card," *Barden* runs counter to the legislature's intention to put debit cards on an equal footing with credit cards, at least with respect to these Penal Law provisions (*see supra* at 114-115). Finally, by enacting laws relating to identity theft and, more specifically, the unlawful possession of personal identification information (*see* Penal Law §§ 190.81, 190.82, 190.83), the legislature has already addressed the problem presented by the misuse of intangible financial information such as credit card numbers. In any event, as we have already pointed out (*supra* at 116-117), if the unauthorized possessor of a credit card number uses it to purchase property, that use will be punishable under the traditional larceny statutes. For all of these reasons, we decline to follow *Barden* insofar as it is inconsistent with our interpretation of the relevant statutes as informed by the legislative history.

In sum, we agree with Luis and the presentment agency that Luis's theft and possession of his grandfather's debit card number, and not the debit card itself, was insufficient to support a finding that he stole or possessed property that consisted of a "debit card."

Accordingly, the appeal from so much of the order of disposition as placed Luis on probation for a period of 12 months is dismissed as academic, the order of disposition is reversed insofar as reviewed, on the law, the fact-finding order is vacated, the petition is dismissed, and the matter is remitted to the Family Court, Kings County, for further proceedings in accordance with Family Court Act § 375.1.

Mastro, J.P., Rivera and Miller, JJ., concur.

Ordered that the appeal from so much of the order of disposition as placed the appellant on probation for a period of 12 months is dismissed as academic, without costs or disbursements, as the period of probation has expired (*see Matter of Christian E.*, 68 AD3d 1109 [2009]); and it is further,

Ordered that the order of disposition is reversed insofar as reviewed, on the law, without costs or disbursements, the fact-finding order is vacated, the petition is dismissed, and the matter is remitted to the Family Court, Kings County, for further proceedings in accordance with Family Court Act § 375.1.